FILED

AUG 14 2013

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
for the SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| GARY ALLEN LOTT,<br>    Petitioner,<br><br>v.<br><br>J.S. WALTON, WARDEN,<br>U.S. PENITENTIARY-MARION,<br>    Respondent | )<br>)<br>)<br>) Habeas Corpus No. 13-833-DRH<br>) Originating Criminal Matter,<br>) U.S. D.C. W.D. Oklahoma,<br>) Case No. CR-99-30-1-T<br>) |

*** PETITION UNDER 28 U.S.C. §2241,
for a WRIT OF HABEAS CORPUS ***

    **PETITIONER** Gary A. Lott hereby files this habeas corpus petition, under 28 U.S.C. §2241, and the savings clause of 28 U.S.C. §2255(e). This petition seeks to vacate his pre-<u>Alleyne</u> [v. United States, No. 11-9335, (S. Ct. June 17, 2013)] sentence, on the ground that he is actually innocent of a mandatory-minimum life sentence, because prosecutors did not submit drug or chemical quantities, or other mandatory-minimum-triggering facts to a jury (e.g. in special verdict forms), to support a mandatory life sentence. ("When a prisoner's sentence is enhanced without a valid factual basis, yet he remains incarcerated pursuant to that sentence, it follows inexorably that he is a victim of a miscarriage of justice;" <u>Spence v. Superintendent</u>, 219 F.3d 162 (2nd Cir. 2000)).

For a defendant sentenced under a mandatory-minimum guidelines scheme (i.e. pre-Booker), Alleyne is **significant**. Alleyne holds: "Because mandatory-minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an 'element' that must be submitted to a jury. Accordingly, Harris [v. United States, 536 U.S. 545 (2002)], is overruled." (slip op. at 10-16).

In Petitioner's case, prosecutors did not submit drug quantities and other mandatory-minimum-triggering facts to jurors in special verdict forms to support a mandatory-minimum **life** sentence. Thus, defendant is actually innocent of necessary elements to support a mandatory-minimum sentence.

\*
\* \*

## "The Story"

On July 30, 1999, Mr. Lott was convicted by jury of <u>two</u> counts of "Conspiracy to manufacture and distribute methamphetamine," 21 U.S.C. §846; <u>three</u> counts of "Maintaining a residence to manufacture methamphetamine," 21 U.S.C. §856(a)(1); <u>one</u> count of "Possession of chemicals with intent to manufacture methamphetamine," 21 U.S.C. §841(d)(1); and <u>one</u> count of "Use of a firearm in relation to a drug-trafficking crime," 18 U.S.C. §924(c)(1). No violence or potential violence occurred.

This being his first-ever controlled substance offense or felony, Petitioner nevertheless received a mandatory-minimum life sentence. His only prior legal transgressions were in the State of Oklahoma, for two "driving under suspension" license violations; and one "transporting a loaded firearm" charge, after he carelessly threw all of his personal belongings into his car, while moving to a different residence.

The instant federal "ghost dope" enhancements -- which increased his mandatory-minimum sentence -- were objected-to in the PSR Addendum (pp. 21-22, Objections to ¶¶ 9, 40, 41, and 42; ¶ 28; ¶ 35; and ¶ 43). These formed the basis for a later "harmless error" loss on direct appeal. See <u>United States v. Lott</u>, 310 F.3d 1231 (10th Cir. Nov 2002, corrected), because under a mandatory sentencing scheme, a sentence for several years beyond natural life is a life sentence all the same. Lott did not claim actual innocence of mandatory-minimum-triggering enhancement facts not found by jury.

Petitioner's first-and-only habeas filing to date, failed to provide relief; where relief was requested under twelve grounds of ineffective assistance of counsel. Claims of warrantless searches, failures to suppress, failure to investigate (or hire an investigator), double counting, or improper jury instruction, all lacked substantive support. United States v. Lott, U.S. D.C. W.D. Oklahoma, CIV-04-511-T, 2007).

## "Alleyne -- A New Substantive Rule -- And Retroactivity"

When a conviction is final, a new rule announced by the Supreme Court applies retroactively if it is a substantive rule. Schriro v. Summerlin, 542 U.S. 345 (2004). A substantive rule is one that "decriminalize[s] a class of conduct [Or] prohibit[s] the imposition of [certain] punishment on a particular class of persons." Saffle v. Parker, 494 U.S. 484 (1990). Alleyne articulated "a substantive rule of statutory interpretation" because -- like the jury's special verdict form in petitioner Lott's case of "ghost dope" -- Allen Alleyne's verdict form clearly indicated that the jury did not need to find a mandatory-minimum triggering fact (there, "brandishing"), beyond a reasonable doubt. And tragically, both Mr. Lott and Mr. Alleyne's mandatory minimums were elements added later without being proven. Thus like Alleyne, Petitioner Lott received a punishment that the law cannot impose upon him.

<u>Alleyne</u> falls within the class of **substantive** decisions that "prohibit[s] a certain category of punishment for a class of defendants because of that status of offense." <u>O'Dell v. Netherland</u>, 521 U.S. 151, 157 (1997).

### "Applying <u>Davenport</u> to <u>Alleyne</u>, or, 'Why A §2241, And Not A Successive §2255?'"

A 21st-Century interpretation of <u>In re Davenport</u>, 147 F.3d 605 (7th Cir. 1998), is championed by the Seventh Circuit interpreting another substantive statutory-interpretation case, in <u>Brown v. Rios</u>, 2012, U.S. App. LEXIS 17420 (7th Cir. 2012), because substantive issues often elude the permissions of a successive §2255.

1. When the new Supreme Court case is not a constitutional case, but a substantive "statutory interpretation" case, a Petitioner could not have invoked it by means of a second or successive §2255 motion. 28 U.S.C. §2255(h)(2). See also, <u>United States v. Wyatt</u>, 672 F.3d 519 (7th Cir. 2012).

2. <u>Alleyne</u> can be invoked retroactively, provided that the later motion is not a section 2255 motion. It isn't, it is a section 2241 motion, based on Seventh Circuit, and Tenth Circuit-of-Origin law.

    ANALYSIS: The **Tenth** Circuit -- Petitioner's "Circuit-of-Origin," -- says that a second or successive §2255 is inadequate of ineffective to test the legality of detention in §2255(f)(3) and (h)(2), because of the way the circuit decides if a new rule applies retroactively to §2255 filings. See, generally, <u>Browning v. United States</u>, 241 F.3d 1262,

5

1264 (10th Cir. 2001): "We have held Teague's [v. Lane, 489 U.S. 288 (1989)] retroactivity analysis...determines whether the new rule is applicable to an **initial** motion for collateral relief." Browning at 1264. But for second or successive habeas petitions, "a new rule is made retroactive to cases on collateral review only when the Supreme Court **explicitely holds** that the rule it announced applies retroactively to such cases." Bey v. United States, 399 F.3d 1266, 1268 (10th Cir. 2005).

Other circuits have concluded that a second or successive §2255 **is** adequate or effective for retroactive, statutory interpretation cases, because §2255(f)(3) "does not require that the initial retroactivity question be decided in the affirmative **only by** the Supreme Court." United States v. Thomas, 627 F.3d 534, 536-37 (4th Cir. 2010); **see also** Wiegand v. United States, 380 F.3d 890, 892 (6th Cir. 2004); Dodd v. United States, 365 F.3d 1273, 1278 (11th Cir. 2004) aff'd 545 U.S. 353 (2005); United States v. Swinton, 333 F.3d 481, 486-87 (3rd Cir. 2003); Fischer v. United States, 285 F.3d 596, 599-600 (7th Cir. 2002); United States v. Lopez, 248 F.3d 427, 432 (5th Cir. 2001).

According to the **Tenth** Circuit's holding in Browning, a successive §2255 filing by Mr. Lott under the substantive statutory interpretation change in law in Alleyne is therefore inadequate or ineffective to test the legality of his detention. Alleyne can therefore be invoked retroactively by Petitioner Lott (a 10th Circuit defendant), as long as it isn't a section 2255 filing, but rather a section 2241 filing.

3. Like Alleyne, Lott's sentence enhancements are necessary elements used to increase his mandatory-minimum life sentence; elements of which he is actually innocent. This is grave-enough error to be deemed a miscarriage of justice "corrigible therefore in a habeas corpus proceeding [under §2241]." (Brown, interpreting Davenport).

The Seventh Circuit has drawn a line in the "§2241 sand," in that, a miscarriage of justice manifested in a mandatory increase in a sentence -- without a valid factual basis -- is cognizable by petitioners who were sentenced **before** Booker. In Hawkins v. United States, 2013 U.S. App. LEXIS 2597 (7th Cir. 2013), petitioner was distinguished by the appellate panel as not warranting §2241 relief, because he was sentenced after Booker. Thus, this plays well for Lott, as his mandatory-minimum life sentence was handed down without a factual basis before both Booker and Apprendi.

"How Petitioner Lott Should Be Resentenced, From **Life**, To 3-to-8 Years"

Lott's original PSR calculations are contained in Exhibit C. But turning to the USSG reveals the following offense-level calculations, where the highest result of any one individual offense calculation contains the others because of grouping under §3D1.2(d):
**Guideline Provisions:** Pursuant to USSG §2D1.1, based on a total offense level of 18, and a criminal history category of II, the guideline for imprisonment is 30-to-37 months. See Exhibit **D**.

Due to Mr. Lott's Count 12 conviction for "use of a firearm in relation to a drug-trafficking crime, under 18 U.S.C. §924(c)(1), the 5-year term of imprisonment -- under a mandatory sentencing scheme -- shall not run concurrently with any other sentence imposed. But if successful on this habeas, it may run concurrent because "consecutive only" (i.e. "shall not run concurrently"), is a USSG rule, and is not a statute like §924. Petitioner hereby preserves the claim that this, along with his §2D1.11(L)(5) and §3B1.1(a) enhancements are also elements to be analyzed should counsel be appointed. (Emission of a hazardous substance, and leadership in a conspiracy role, respectively, elements not proven by a jury in special verdict forms).

*
* *

Assuming arguendo that the defendant must show that the Supreme Court has already made the procedural aspect of Alleyne retroactive, in Tyler v. Cain, 533 U.S. 566 (2001), the Court held, that multiple holdings of the Court, taken together, "necessarily dictate" retroactivity of the new rule:

> "If we hold in 'case one' that a particular type of rule applies retroactively to cases on collateral review and hold in 'case two' that a given rule is of that particular type, then it necessarily follows that the given rule applies retroactively to cases on collateral review." (Idem at 688).
> "The matter is one of logic. If case one holds that all men are mortal and case two holds that Socrates is a man, we do not need case three to hold that Socrates is mortal." (Idem at 672-3).

8

Where the major purpose of new constitutional doctrine -- like Alleyne -- is to overcome an aspect of the criminal trial that substantialy impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials, the new rule is given retroactive effect. See Hankerson v. North Carolina, 432 U.S. 233 (1977).

The juxtaposition of Apprendi and Alleyne shows that (1) the Supreme Court knew how to announce a new procedural rule; and it chose to do just that in Apprendi ("The substantive basis for New Jersey's enhancement is...not at issue; the adequacy of New Jersey's procedure is"). Apprendi, 530 U.S., at 475; but (2) it chose not to do so in the Alleyne decision, by redefining what constitutes an element of a crime.

Apprendi dictates only who must decide certain factual disputes (Judge v. Jury), and under what standard of proof (Preponderance v. Reasonable Doubt); it does not determine which facts are "elements of a crime." Booker further managed to bring the USSG's back into the zip code of consistutional, by eradicating their mandatory nature. And Alleyne announced a new substantive rule where "[a]ny fact that, by law, increases the penalty for a crime is an element that must be submitted to the jury and found beyond a reasonable doubt..." 133 S.Ct. at 2155 (citation omitted), and importantly, overruled Harris as badly decided.

Hence, Alleyne suggests that Lott -- whose case was adjudicated under a radically unconstitutional regime -- was "convicted of an act that the law does not make criminal or [received] a punishment

that the law cannot impose upon him." <u>Schriro v. Summerlin</u>, 542 U.S. 348, 352 (2004). Therefore, the only proper conclusion that is apparent to Petitioner to reach, then, is that <u>Alleyne</u> resulted in a "[n]ew substantive rule []" retroactively applicable to qualifying cases on collateral review. <u>Idem</u> at 351.

*
* *

## RELIEF REQUESTED/CONCLUSION

Petitioner Lott hereby requests a hearing to determine his eligibility under <u>Alleyne</u> for relief, because there is no valid factual basis to support a mandatory-minimum life sentence; a sentence of which he is <u>actually innocent</u>.

In the event Mr. Lott's request is denied, he respectfully requests that his Petition be dismissed <u>without</u> prejudice, so that he may preserve the claim.

This case presents an uncommon mix of the right facts for consideration under <u>Alleyne</u> to meet the ends of justice. Granting relief will open no floodgates because **(i)** he is pre-<u>Booker</u> and has no factual basis for his mandatory sentence enhancements; and **(ii)** unlike the 3rd, 4th, 5th, 6th, and 11th Circuits which allow a substantive statutory interpretation case in a second or successive §2255, Mr. Lott is from the 10th Circuit, where the <u>Alleyne</u> claim eludes the permission on a successive §2255, and is therefore corrigible in a §2241 proceeding.

Individual equities do not typically sway a vote one way or the other, but in petitioner's case, without begging the question, Mr. Lott has -- since his high-security USP days -- <u>never</u> had an incident report (i.e. "shot"); he has also worked in UNICOR for over ten years, and is in many ways a model recovery-minded inmate. He has successfully completed the first stage of the RDAP drug progam, but was precluded from the residential aspect because of his life sentence.